IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

EVERETT FINANCIAL, INC. d/b/a §
SUPREME LENDING, §
 §
      Plaintiff-counterdefendant, §
 § Civil Action No. 3:14-CV-1028-D
VS. §
 §
PRIMARY RESIDENTIAL §
MORTGAGE, INC., §
 §
      Defendant, § *This memorandum opinion and order was originally
 § filed under seal on February 10, 2017.  It was unsealed
and § on February 28, 2017 after the parties agreed that no
 § part needed to remain under seal.
BARRY G. JONES, JAMES DURHAM, §
and SHANNON FORTNER, §
 §
      Defendants-counterplaintiffs. §
 §
SCOTT EVERETT, individually, §
 §
      Counterdefendant. §

MEMORANDUM OPINION
AND ORDER

In response to a *Daubert* ruling,[1] plaintiff-counterdefendant Everett Financial, Inc.

d/b/a Supreme Lending ("Supreme") supplemented its Fed. R. Civ. P. 26(a)(1) initial

disclosure of its damages computation.  The instant motions present questions concerning

whether relief should be granted considering that this supplementation occurred at a late

stage of the case.

---

[1]*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

I

This is an action by Supreme against defendant Primary Residential Mortgage, Inc. ("PRMI") and defendants-counterplaintiffs Barry G. Jones, James Durham, and Shannon Fortner (collectively, the "Branch Managers") arising from conduct related to the Branch Managers' resignations from Supreme and moves to PRMI. Supreme's chief executive officer, Scott Everett ("Everett"), is a counterclaim defendant.[2] The factual background of this case is set out in two prior memorandum opinions and orders. *See Everett Fin. Inc. v. Primary Residential Mortg., Inc.*, 2017 WL 90366, at *1 (N.D. Tex. Dec. 19, 2016) (Fitzwater, J.) ("*Everett II*")[3]; *Everett Fin. Inc. v. Primary Residential Mortg., Inc.* 2016 WL 7378937, at *1-5 (N.D. Tex. Dec. 6, 2016) (Fitzwater, J.).[4] The court will therefore limit its discussion of the background facts and procedural history to what is pertinent to the court's resolution of the instant motions.

Under Rule 26(a)(1)(A)(iii), Supreme was required to disclose its damages computations. Supreme's initial disclosure, made in August 2014, briefly listed the categories of damages sought, including lost profits. Supreme supplemented this disclosure in November 2015 with the statement that a computation of its lost profits damages was

---

[2]Everett is more properly characterized as a third-party defendant. But because throughout this litigation the parties have referred to Everett as a counterclaim defendant, the court does so as well in this memorandum opinion and order.

[3]Westlaw reflects that the date of this opinion is January 10, 2017. That is the date the opinion was unsealed and made public. The correct date is December 19, 2016.

[4]Westlaw reflects that the date of this opinion is December 20, 2016. That is the date the opinion was unsealed and made public. The correct date is December 6, 2016.

contained in the expert report of Jeffrey Matthews ("Matthews").

Supreme designated Matthews as a retained expert on lost profits damages. Supreme also designated Everett, Supreme chief financial officer Tony Schmeck ("Schmeck"), and Supreme executive Rick Hogle ("Hogle") as nonretained experts on lost profits. Supreme's nonretained experts were deposed in this case, but their depositions did not focus on lost profits damages. Supreme's counsel later agreed to limit the testimony of Schmeck and Hogle, but not Everett, on the subject of lost profits opinions. Discovery in this case closed in December 2015.

In December 2016 the court excluded Matthews' opinion testimony for lack of reliability under the *Daubert* standard. *Everett II*, 2017 WL 90366, at *9. In apparent response to the court's ruling, Supreme supplemented its lost profits damages computation in January 2017. The supplemental disclosure computes lost profits by comparing Supreme's Southeast Region financials before and after the actions complained of in this case. It takes the difference between the region's 2013 and 2014 loan volume and multiplies this difference by Supreme's company-wide profit margin, which is its profit per dollar of loan volume. This formula yields a lost profits figure of approximately $5 million.[5]

The following motions are pending for decision and addressed in this memorandum opinion and order: (1) defendant PRMI's January 18, 2017 motion to exclude evidence of undisclosed "lost profits" computation; (2) defendant PRMI's January 18, 2017 motion for

---

[5](2013 loan volume - 2014 loan volume) * net variable profit margin = lost profits.

leave to file second motion for partial summary judgment; (3) the Branch Managers' January

18, 2017 motion to exclude evidence of undisclosed "lost profits" computation; (4) the

Branch Managers' January 18, 2017 motion for leave to file second motion for partial

summary judgment; and (5) Supreme's February 1, 2017 alternative motion for leave to serve

supplemental Rule 26 disclosures.  In sum, PRMI and the Branch Managers challenge

Supreme's most recent supplementation.  They move to exclude the lost profits computation

as an untimely disclosure, and for leave to file motions for partial summary judgment against

any lost profits damages element.  Supreme opposes the motions, and, in the alternative,

moves for leave to supplement its initial disclosures.  The first four motions are before the

court on expedited briefing.  Although no response to the fifth motion is due, the court is

deciding it because the court's other rulings have rendered it moot.

II

Rule 26(a)(1)(A) provides that "a party must, without awaiting a discovery request,

provide to the other parties: . . . a computation of each category of damages claimed by the

disclosing party[.]"  *Id.*  Rule 26(e)(1) provides that "[a] party who has made a disclosure

under Rule 26(a) . . . must supplement or correct its disclosure or response: (A) in a timely

manner if the party learns that in some material respect the disclosure or response is

incomplete or incorrect[.]"  *Id.*  Although Rule 26(e) places no other deadlines on

supplementation of nonexpert disclosures, supplementation is subject to reasonable limits to

ensure that it does not become a subterfuge for untimely disclosures.  *See CQ, Inc. v. TXU*

*Mining Co.*, 565 F.3d 268, 280 (5th Cir. 2009) (affirming trial court's exclusion of late-

disclosed damages computations).

> [C]ourts, including this one, have cautioned that problems can arise when they allow supplementation too close to the date of trial.  In light of the large window of time allowed . . . the Court should not automatically permit testimony at trial as to the newly discovered information if, considering the facts of the case, it is convinced that doing so would be unfair or cause undue delay or expense.

*AMX Corp. v. Pilote Films*, 2007 WL 1813770, at *2 (N.D. Tex. June 22, 2007) (Fitzwater, J.) (citation, brackets, and internal quotation marks omitted) (addressing supplementation in context of expert reports).

When deciding whether to allow supplementation near trial or after the close of discovery, the court's discretion is guided by the same Rule 37(c)(1) analysis that applies when Rule 26(a) has been violated.  *See CQ*, 565 F.3d at 280; *Jacobs v. Tapscott*, 2006 WL 2728827, at *11-12 (N.D. Tex. Sept. 25, 2006) (Fitzwater, J.), *aff'd*, 277 Fed. Appx. 483 (5th Cir. 2008).

> In evaluating whether a violation of Rule 26 is harmless, the court examines four factors: (1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose.

*Hoffman v. L&M Arts*, 2013 WL 81578, at *2 (N.D. Tex. Jan. 8, 2013) (Fitzwater, C.J.) (citing *Librado v. M.S. Carriers, Inc.*, 2004 WL 1490304, at *11 (N.D. Tex. June 30, 2004) (Fitzwater, J.)), *aff'd in part, rev'd in part on other grounds*, 838 F.3d 568 (5th Cir. 2016).

"The court considers the four-factor test holistically.  It does not mechanically count the

number of factors that favor each side." *Id.* at \*3 n.7 (quoting *EEOC v. Serv. Temps, Inc.*, 2009 WL 3294863, at \*3 (N.D. Tex. Oct. 13, 2009) (Fitzwater, C.J.), *aff'd*, 679 F.3d 323 (5th Cir. 2012)) (citations and internal quotation marks omitted).

III

A

PRMI and the Branch Managers contend that Supreme's January 2017 supplement is an alternative damages computation, offered only as a replacement for the excluded Matthews testimony, and that under the Rules it should have been disclosed much earlier as an initial disclosure. They maintain that evidence supporting the damages computation should be excluded unless the untimeliness is harmless. *See* Rule 37(c)(1); *CQ*, 565 F.3d at 280.

PRMI and the Branch Managers contend that the supplemental disclosure is not harmless. They maintain that evidence offered to support the lost profits computation is not important, because lost profits is not Supreme's only form of damages, and the proffered computation is unlikely to be persuasive at trial; that they will be prejudiced if the supplemental damages computation is not excluded, because their litigation strategy, including how they questioned Supreme's witnesses and which theories they asserted in motions and depositions, relied on Supreme's initial disclosure that its lost profits theory would be the one described in the Matthews Report; and that a continuance would not cure this prejudice because they would incur additional discovery and expert costs, and their strategic decisions cannot be undone.

Supreme responds that its theory of lost profits has been consistent through each iteration of Rule 26(a)(1) disclosures, and that its supplemental damages computation is therefore substantially justified. Supreme contends that, although the computation was only disclosed after the court excluded Matthews' testimony, it is essentially similar to the Matthews Report, and the opposing parties therefore received adequate notice. Supreme maintains that its January 2017 computation eliminates the flawed element of the Matthews Report—projections based on market loan number data—while keeping the basic premise of lost loan volume intact. Supreme also posits that it has previously designated nonretained experts to testify to lost profits, including Everett.

And Supreme contends that its supplemental damages computation is harmless. It posits that the computation is important, because lost profits constitute 85% of its damages in this case; that PRMI and the Branch Managers will not be prejudiced because, had Supreme disclosed an alternative damages computation contemporaneously with the Matthews Report in 2015, costs for additional depositions of Everett and others would have been no different than they will be in 2017; that the documents supporting lost profits damages were disclosed over a year and a half ago; and that any prejudice can be cured through additional discovery, which Supreme could pay for, rather than through excluding all lost profits evidence.

B

The court concludes that Supreme's January 2017 lost profits computation is not materially different from the previous disclosure that referenced the Matthews Report. As

a computation of damages, there is little in the January 2017 disclosure that would have

given PRMI and the Branch Managers additional notice or preparation had it been disclosed

earlier. The January 2017 disclosure, like the Matthews Report, computes lost profits by

comparing Supreme's Southeast Region loan volumes before and after the Branch Managers'

departures. This formula itself is not sufficiently different from Supreme's previous Rule

26(a)(1) disclosure to have required supplementation. *See Joe Hand Promotions, Inc. v.*

*Chios, Inc.*, 544 Fed. Appx. 444, 447 (5th Cir. 2013) (per curiam) (affirming admission of

material that was omitted from initial disclosure because opposing party had notice of

information).

Notwithstanding Supreme's consistent damages theory, however, the January 2017

supplement does depart from Supreme's previous disclosures in another respect: the sources

of Supreme's evidence of lost profits. As Supreme acknowledges in its transmittal letter, lost

profits damages testimony will now come from Everett and Schmeck. *See* PRMI App. 3.

Before, it would have come primarily from Matthews. *See id.* 85-86 (correspondence

between counsel). It is here that Supreme's new disclosure is untimely and not harmless.

Although Supreme's lost profits computation has not materially changed, the

witnesses testifying to lost profits are completely different. While this change in witnesses

does not make Supreme's supplemental disclosure untimely *per se* under Rule 26(e)(1),

PRMI and the Branch Managers are entitled under the facts of this case to some relief under

Rules 26 and 37. *See Jacobs*, 2006 WL 2728827, at *14 (allowing supplementation of expert

opinions on condition that additional depositions be available). And Supreme is willing to

make its witnesses available for additional depositions and to bear the costs of the depositions, which the court in its discretion finds is the appropriate remedy under the facts of this case. *See id.* Because the trial in this case is not set until the two-week docket of June 19, 2017, a continuance does not appear to be necessary at this time.

Accordingly, PRMI's and the Branch Managers' motions to exclude evidence of undisclosed "lost profits" computation are granted in part and denied in part. Supreme must make Everett and Schmeck available for depositions on a reasonable, agreed schedule, and Supreme must reimburse PRMI and the Branch Managers for their reasonable attorney's fees, taxable costs, and nontaxable expenses incurred in taking these depositions and obtaining the transcripts. Supreme must produce in advance of the depositions any materials on which Everett or Schmeck will rely when testifying about lost profits.

IV

PRMI and the Branch Managers also move for leave to file a second motion for summary judgment. The motions rely on their contention that, considering the court's *Daubert* ruling, Supreme cannot advance any evidence of lost profits; because the court disagrees with this premise, the motions are denied.

V

Supreme moves in the alternative for leave to supplement its Rule 26(a)(1) disclosures. Because the court holds that supplementation was substantially unnecessary and that any prejudice from the timing of Supreme's change in supporting witnesses can be cured by the relief specified above, it denies this motion as moot.

\*   \*   \*

Accordingly, for the reasons explained, PRMI's and the Branch Managers' January 18, 2017 motions to exclude evidence of undisclosed "lost profits" computation are granted in part and denied in part; PRMI's and the Branch Managers' January 18, 2017 motions for leave to file second motion for partial summary judgment are denied; and Supreme's February 1, 2017 alternative motion for leave to serve supplemental Rule 26 disclosures is denied as moot.

**SO ORDERED**.

February 10, 2017.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE