IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EVERETT FINANCIAL, INC. d/b/a SUPREME LENDING, | § § § § | |
| Plaintiff-counterdefendant, | § § | Civil Action No. 3:14-CV-1028-D |
| VS. | § § | |
| PRIMARY RESIDENTIAL MORTGAGE, INC., | § § § | |
| Defendant, | § § | |
| and | § § | |
| BARRY G. JONES, JAMES DURHAM, and SHANNON FORTNER, | § § § § | |
| Defendant-counterplaintiffs, | § § | |
| SCOTT EVERETT, individually, | § § | |
| Counterdefendant. | § | |

MEMORANDUM OPINION
AND ORDER

In a prior memorandum opinion and order in this case, the court decided not to exclude as an untimely disclosure the new lost profits computation of plaintiff-counterdefendant Everett Financial, Inc. d/b/a Supreme Lending ("Supreme"), which is based on the testimony of new witnesses. *See Everett Fin., Inc. v. Primary Residential Mortg., Inc.*, 2017 WL 784766, at *1 (N.D. Tex. Feb. 28, 2017) ("*Everett III*"). Because Supreme was supplementing its disclosures at a late stage, the court mitigated

potential prejudice by ordering Supreme to make the witnesses available for depositions and reimburse reasonable associated expenses. Defendant Primary Residential Mortgage, Inc. ("PRMI") now applies for attorney's fees associated with the depositions. For the reasons that follow, the court grants the application in part and awards PRMI the sum of $70,436.00 in attorney's fees and expenses.

I

This is an action by Supreme against defendant PRMI and defendants-counterplaintiffs Barry G. Jones, James Durham, and Shannon Fortner (collectively, the "Branch Managers") arising from conduct related to the Branch Managers' resignations from Supreme and moves to PRMI. Supreme's founder and President, Scott Everett ("Everett"), is a counterclaim defendant.[1] Because this case is the subject of prior memorandum opinions and orders—*see, e.g.*, *Everett III*—the court recounts only the background facts and procedural history that are pertinent to PRMI's attorney's fees application.

Under Fed. R. Civ. P. 26(a)(1)(A)(iii), Supreme was required to disclose its damages computations. Supreme's initial disclosure, made in August 2014, briefly listed the categories of damages sought, including lost profits. Supreme supplemented this disclosure in November 2015 with the statement that a computation of its lost profits damages was contained in the expert report of Jeffrey Matthews ("Matthews"). Discovery in this case

---

[1]As the court has noted previously, Everett is more properly characterized as a third-party defendant. But because throughout this litigation the parties have referred to Everett as a counterclaim defendant, the does so as well in this memorandum opinion and order.

closed in December 2015.

In December 2016 the court excluded the opinions of Matthews for lack of reliability under the *Daubert*[2] standard. In apparent response to the court's ruling, Supreme supplemented its Rule 26(a)(1) disclosures with a different damages calculation and different expert witnesses who would testify about the calculation. The supplemental disclosure computes lost profits by comparing Supreme's Southeast Region financials before and after the actions complained of in this case. It takes the difference between the region's 2013 and 2014 loan volume and multiplies this difference by Supreme's company-wide profit margin, which is Supreme's profit per dollar of loan volume. This formula yields a lost profits figure of approximately $5 million.[3] Supreme now seeks to introduce damages evidence through Everett and Tony Schmeck ("Schmeck").

PRMI and the Branch Managers filed motions to exclude evidence of the undisclosed "lost profits" computation. The court denied the motion to exclude, holding that Supreme's lost profits computation had not materially changed because it still computed lost profits by comparing Supreme's Southeast Region loan volumes before and after the Branch Managers' departures. The court also held, however, that because the witnesses testifying to lost profits were completely different, Supreme was required to make its experts (Everett and Schmeck) available for depositions. Supreme was further required to "reimburse PRMI and the Branch

---

[2]*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

[3](2013 loan volume - 2014 loan volume) * net variable profit margin = lost profits.

- 3 -

Managers for their reasonable attorney's fees, taxable costs, and nontaxable expenses incurred in taking these depositions and obtaining the transcripts." *Everett III*, 2017 WL 784766, at *4. PRMI's depositions of Everett and Schmeck, which together totaled 8 hours, proceeded on August 30 and 31, 2017.

PRMI now applies for attorney's fees and expenses, related to the depositions. In support of its fee application, PRMI submits invoices from Norton Rose Fulbright US LLP ("Norton Rose") detailing the hours spent preparing for the depositions.[4] PRMI asks for a total attorney's fees award of $118,299 based on 265.15 hours of gathering and reviewing materials, conferencing regarding the materials, and conducting the depositions.[5] This time is divided among three attorneys: Richard S. Krumholz, Esquire ("Krumholz"), a Norton Rose partner; John R. Herring, Esquire ("Herring"), a Norton Rose senior associate, and Joseph D. Piorkowski, Esquire ("Piorkowski"), a Norton Rose associate. Krumholz is the Head of Litigation for the United States at Norton Rose; Herring is a senior associate with

---

[4]After Supreme responded to PRMI's application, PRMI filed a reply, a public appendix, and a sealed appendix. The sealed appendix contained the unredacted versions of the Norton Rose invoices attached to PRMI's original application for attorney's fees, as well as an additional declaration, emails, deposition transcript excerpts, and documents produced by Supreme. Supreme objected to the evidence submitted with PRMI's reply and moved to exclude the two appendixes on the ground that Supreme had not had an opportunity to respond to the new material. On April 12, 2018 the court overruled the objection and stated that it would consider the appendixes filed publicly and filed under seal on December 20, 2017. The court also granted the parties leave to file a surreply and final reply, which the parties have now submitted.

[5]Because Supreme does not challenge these calculations, the court accepts them as a baseline when making its adjustments as described *infra* in the opinion.

nine years' experience; and Piorkowski is an associate with two years' experience. PRMI's attorney's fees application is based on an average hourly rate of $423.00.[6] Supreme opposes the application.

II

A

> The determination of a fees award is a two-step process. First the court calculates the "lodestar" which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. The court should exclude all time that is excessive, duplicative, or inadequately documented. Once the lodestar amount is calculated, the court can adjust it based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

*Jimenez v. Wood Cnty., Tex.*, 621 F.3d 372, 379-80 (5th Cir. 2010) (some citations omitted). The lodestar is presumptively reasonable, *see Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010), but the applicant bears the burden of substantiating both the requested hours and the hourly rates, *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

B

The court first considers whether the requested hourly rates are reasonable. PRMI's requested fees rely on an average hourly rate charged by Norton Rose of around $423.00. PRMI includes Krumholz's declaration in which he avers that "the reasonable hourly rate in the Dallas area for similarly skilled attorneys providing comparable services in large,

---

[6]This represents Krumholz's hourly rate of $657.00, Herring's hourly rate of $410, and Piorkowski's hourly rate of $185.00.

complex commercial litigation cases is $500." PRMI 11/15/17 App. 31.

Supreme does not challenge the requested hourly rates as unreasonable. "When th[e] rate is not contested, it is prima facie reasonable." *Islamic Ctr. of Miss., Inc. v. City of Starkville*, 876 F.2d 465, 469 (5th Cir. 1989). Given their respective levels of experience and the prevailing rates in the Dallas area, the court, as an expert as to the reasonableness of attorney's fees, finds that these hourly rates are customarily charged in this locality for similar legal services and that the rates for the attorneys are reasonable. They will therefore be used in calculating the lodestar. *See, e.g., Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) ("[T]rial courts are considered experts as to the reasonableness of attorney's fees[.]") (applying federal law); *Wachovia Bank, Nat'l Ass'n v. Schlegel*, 2010 WL 4275277, at *2 n.4 (N.D. Tex. Oct. 29, 2010) (Fitzwater, C.J.) (same).

C

The court next determines the number of hours reasonably spent by PRMI's counsel. Supreme challenges on a number of grounds the number of hours for which PRMI seeks compensation.

1

Supreme maintains that the court's memorandum opinion and order limits relief to fees incurred in *taking* the depositions; thus PRMI's requested fees, by including time spent *preparing* for the depositions, go beyond the scope of the court's order. The court disagrees with Supreme's interpretation of the court's order.

In *Everett III* the court held, in relevant part:

> Supreme is willing to make its witnesses available for additional depositions *and to bear the costs of the depositions*, which the court in its discretion finds is the appropriate remedy under the facts of this case. . . . Supreme must make Everett and Schmeck available for depositions on a reasonable, agreed schedule, and *Supreme must reimburse PRMI and the Branch Managers for their reasonable attorney's fees, taxable costs, and nontaxable expenses incurred in taking these depositions and obtaining the transcripts.*

*Everett III*, 2017 WL 784766, at *3 (emphasis added). In so holding, the court was concerned with remedying potential prejudice to PRMI and the Branch Managers resulting from costs associated with late discovery. Considering the fact that the bulk of the costs associated with deposing new witnesses comes from preparing for, rather than conducting, the deposition, the broad language in the court's opinion and Supreme's own briefing does not permit the reasonable conclusion that the court's order pertained solely to reimbursing the time it took to conduct the depositions. The court thus holds that PRMI's application for attorney's fees related to preparing for the depositions does not exceed the scope of the court's memorandum opinion and order.

Supreme also challenges certain entries as unrelated to preparing for depositions, including, *inter alia*, 2.9 hours that Piorkowski expended "continu[ing] legal research regarding [redaction] to prepare to exclude expert opinions of S. Everett" and 2.3 hours that Piorkowski spent on "[l]egal research regarding Federal case law on business owner and officer testimony pursuant to Federal Rule of Evidence 701 in preparation of depositions of S. Everett and T. Schmeck." PRMI 12/20/17 App. 12. Because this research appears to be directly relevant to the subject of the depositions—lost profits—the court declines to reduce

the hours on this basis.

2

Supreme maintains that PRMI's evidence is too vague and that the court should strike the summary references. "The district court may properly reduce or eliminate hours when the supporting documentation is too vague to permit meaningful review." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 326 (5th Cir. 1995) (per curiam) (quoting *Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir. 1990) (per curiam)). Vague entries are those that are "not illuminating as to the subject matter" or "vague as to precisely what was done." *Kellstrom*, 50 F.3d at 326. Entries such as "revise memorandum," "review pleadings," "review documents," and "correspondence" are sufficiently vague that the court can accept or reject them in a fee application. *See id.* at 326 n.11.

The court holds that portions of PRMI's documentation are too vague to permit meaningful review. The vague entries include, *inter alia*, "[c]ontinue to review and analyze documents identified by Supreme Lending as supporting Plaintiff's new damages computation," PRMI 12/20/17 Reply App. 16; "[p]repare for depositions of S. Everett and A. Schmeck," *id.* 20, "[c]ontinue to prepare for depositions of S. Everett and A. Schmeck," *id.*, and "[r]eview and analyze recently-produced documents from counsel for Plaintiff purportedly in support of Plaintiff's damages calculation," *id.* 22. These entries are in addition to those that remain heavily redacted, including, *inter alia*, "[c]ontinue review and analysis of Supreme Lending's supplemental damages computation, including [redacted]," *id.* 9, and "[p]repare for depositions of S. Everett and T. Schmeck, including [redacted]," *id.*

12.

After extensively reviewing the record, the court finds that at least 21.05 hours of Krumholz's billed time, 27.5 hours of Piorkowski's billed time, and 70.6 hours of Herring's billed time are based on descriptions that are too vague to support an award of attorney's fees. The court will therefore reduce Krumholz's compensable time by 21.05 hours, Piorkowski's compensable time by 27.5 hours, and Herring's compensable time by 70.6 hours. *See Hensley*, 461 U.S. at 433 ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly."); *Kellstrom*, 50 F.3d at 326 (applying a ten percent reduction for inadequate documentation of the hours and fees requested).

3

Supreme maintains that PRMI spent an unreasonable and unnecessary amount of time conducting internal conferences (approximately 52 hours, or 6.5 hours per every one hour of deposition). Supreme also objects to the 118.85 hours in total that PRMI labels as variations on "prepare for deposition." These entries, for example, are noted as "[p]repare for depositions of S. Everett and A. Schmeck, including conference with R. Krumholz regarding same," PRMI 12/20/17 Reply App. 20, or "[c]ontinue preparation for depositions of S. Everett and A. Schmeck at Supreme Lending[,]" *id.* 22. Supreme points to the fact that Krumholz and Herring billed 59.85 for "preparing for depositions" in the month of August alone.

Supreme also challenges the 57.5 hours that PRMI's attorneys billed for reviewing documents. Many of these entries are labeled as "[r]eview and analyze documents identified

by Supreme Lending as supporting Plaintiff's new damages computation[,]" *id.* 16, or "[r]eview and analyze case documents to prepare for depositions[,]" *id*. 21. Supreme maintains that the lost profits calculation is not materially different from the previous calculation and that Everett and Schmeck are still relying on the same data source—Supreme's internal financial data—to calculate Supreme's baseline profits. Supreme therefore contends that 57.5 hours reviewing documents already produced in the case should be reduced or stricken entirely.

PRMI responds that Supreme is no longer using RealtyTrac® data and merely assumes that the Southeast Region's projected 2014 volume equals its 2013 volume. PRMI argues that Supreme disclosed none of the assumptions behind its projected profit and NVPM calculations, and thus PRMI was required to spend significant time preparing to anticipate Supreme's assumptions. PRMI also points to its exercise of billing judgment (i.e., write-offs of attorneys' time) as an indication of the reasonableness of its requested hours.[7]

While the court recognizes that PRMI's requests for the time spent on these tasks are overly generous, it is persuaded that the exclusions of vague entries it has already made are sufficient to account for any overbilling. The court declines to make any additional reductions on this basis.

---

[7]PRMI states that it is not seeking reimbursement for the time spent preparing its attorney's fees application, for 24.3 hours of Herring's work, or for 15 hours of Krumholz's work. It also maintains that it is not seeking reimbursement for time spent scheduling the depositions or for motion practice related to the depositions.

Supreme challenges PRMI's application on several other grounds. It contends that PRMI duplicated the time it spent preparing for depositions due to rescheduling. Supreme points to the fact that PRMI scheduled the depositions three different times—the first week in April, the end of May, the beginning of June, and finally at the end of August—and billed 88.9 hours leading up to the April deposition dates and 188.25 hours leading up to the August deposition dates. PRMI responds that it attempted to reschedule the deposition from April to June, but Supreme would not make Everett available for the ensuing three months. PRMI also maintains that Supreme instigated a tedious process of briefing and court conferences by filing a pre-emptive motion for protective order. Because Supreme does not label which work is duplicative and merely relies on the timing of billing and the aggregate amount of hours as indications of duplication, the court declines to reduce any claimed hours on this basis.

Supreme also maintains that PRMI's use of two attorneys—Herring and Krumholz—at the depositions was duplicative. The court disagrees. The attendance of two attorneys at a deposition is not excessive *per se*. Fees are not considered duplicative if the use of more than one attorney is legitimately required. *See Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 768 (5th Cir. 1996) (affirming district court's finding that entry of more than one attorney's time at depositions was reasonable). Supreme's reliance on *Coleman v. Houston Independent School District*, 202 F.3d 264 (5th Cir. 1999), is misplaced. In *Coleman* the court stated that "'hours spent in duplicative activity or spent in the passive

role of an observer while other attorneys perform []' is generally not recoverable." *Id.* (quoting *Flowers v. Wiley*, 675 F.2d 704, 705 (5th Cir. 1982)). Here, however, the court is persuaded that PRMI has demonstrated that Herring, as a technical expert on the new damages computation, provided crucial support to Krumholz in conducting the deposition. The court thus considers appropriate the billing of his time at the deposition.

Supreme finally objects to PRMI's division of labor among its attorneys: in particular, the use of Krumholz, the attorney with the highest billing rate, for basic tasks such as gathering exhibits. The court holds that the adjustments to Krumholz's hours based on vague entries suffice to account for any inefficient division of labor relating to the gathering of exhibits.

D

The court next calculates the lodestar fee and considers the *Johnson* factors.

1

For the reasons explained above, the court reduces Krumholz's claimed time as follows. From the total claimed hours of 68.05, the court subtracts 21.05 hours for vague descriptions. This results in a total number of 47 approved hours for Krumholz's hours. The court multiplies this by the hourly rate $657.00, resulting in a lodestar of $30,879.00.

Regarding Herring, the court reduces his 138 hours by 70.6 hours for vague descriptions. This results in a total number of 67.4 approved hours for Herring's services. Multiplied by the hourly rate of $410, the lodestar equals $27,634.00.

Regarding Piorkowski, the court reduces his 59.1 requested hours by 27.5 hours for

vague descriptions, leaving 31.6 hours. Multiplying this by his hourly rate of $185.00 yields a lodestar of $5,846.00.

The sum of the attorney's fees for all of PRMI's attorneys is the lodestar fee of $64,359.00.

2

Once the lodestar amount is determined, there is a strong presumption that it represents a reasonable fee. *See Perdue*, 559 U.S. at 552; *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). The court can adjust the lodestar upward or downward after assessing the *Johnson* factors,[8] but the party seeking the adjustment bears the burden of establishing that an adjustment is warranted. *Kellstrom*, 50 F.3d at 329 (citing *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 414 (2d Cir. 1989)). Many of the *Johnson* factors are "presumably fully reflected in the lodestar amount," however, such modifications are proper only in certain "'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings[.]" *Del.*

---

[8]The *Johnson* factors are: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19. The Supreme Court has "barred any use" of the sixth factor. *Merrick v. Scott*, 2011 WL 1938188, at *1 n.3 (N.D. Tex. May 20, 2011) (Fitzwater, C.J.) (quoting *Rutherford v. Harris Cnty., Tex.*, 197 F.3d 173, 193 (5th Cir. 1999)). And the second factor generally cannot be used as a ground for enhancing the award. *Perdue*, 559 U.S. at 553.

*Valley Citizens' Council*, 478 U.S. at 565 (citing *Blum v. Stevenson*, 465 U.S. 886, 898-901 (1984)). District courts "need not specifically discuss the *Johnson* factors where [they have] applied the *Johnson* framework." *EEOC v. Agro Distribution, LLC*, 555 F.3d 462, 473 (5th Cir. 2009).

The court concludes that each factor permissibly considered[9] is either subsumed within the lodestar calculation or is not sufficiently pertinent to the facts of the case to warrant discussion.

### III

PRMI also seeks to recover approximately $6,077.00 in expenses related to obtaining transcripts.[10] This amount is supported by four invoices attached to the application. Supreme objects to PRMI's charge in the amount of $694.55 for the use of RealTime, which is software that allows a deposing attorney to view a live feed of the deposition transcript as the deposition proceeds. The court declines to strike this charge in the context of this type of fee award, i.e., a remedy intended to ameliorate a failure to timely disclose a damages computation. And Supreme has provided no evidence or authority to support its conclusory assertion that such a charge is unnecessary.

---

[9]*See supra* note 8.

[10]Supreme states in its response that the amount is $6,098.48, but this sum includes finance charges and debits for which PRMI does not appear to request reimbursement. The court thus refers to the amount as $6,077.00.

* * *

For the foregoing reasons, the court grants in part PRMI's supplemental application for fees and awards PRMI the total sum of $64,359.00 in attorney's fees ($657.00 x 47 hours for Krumholz's services) + ($410 x 67.4 hours for Herring's services) + ($185.00 x 31.6 hours for Piorkowski's services), and $6,077.00 in expenses and costs, for a total award of $70,436.00 in attorney's fees and expenses. Supreme must pay this award to PRMI within 30 days of the date this memorandum opinion and order is filed.

**SO ORDERED**.

July 19, 2018.

                                              _____
                                              SIDNEY A. FITZWATER
                                              UNITED STATES DISTRICT JUDGE